# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| RUSTICK, LLC | Case Number 10-10902-TPA |
| Debtor | Chapter 11 |
| RUSTICK, LLC, | The Honorable Thomas P. Agresti |
| Movant, | |
| v. | Related to Document Nos. 188, 251, 252, and 258 |
| MERRILL LYNCH PORTFOLIO MANAGEMENT, INC.; MERRILL LYNCH PIERCE FENNER & SMITH, INCORPORATED; and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as successor to J.P. Morgan Trust Company, National Association, | Date and Time of Hearing: October 7, 2010 @ 3:00 p.m. Objection/Response Deadline: September 30, 2010 |
| ROSALIE BISHOP, TAX COLLECTOR; | |
| GREATAMERICA LEASING CORP.; | |
| CATERPILLAR FINANCIAL SERVICES CORP.; | |
| EVERGREEN NATIONAL INDEMNITY COMPANY; and | |
| SMETHPORT AREA SCHOOL DISTRICT, | |
| Respondents. | |

**MOTION OF THE DEBTOR FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AS PART OF THE DEBTOR'S PLAN OF REORGANIZATION**

Rustick, LLC (the "Debtor"), in compliance with the requirements set forth in Federal Rule of Bankruptcy Procedure 6004 and General Court Procedure #3, hereby files this Motion (the "Motion") for an Order Authorizing the Sale of Substantially all of the Debtor's Assets as Part of the Debtor's Plan of Reorganization, and in support hereof states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1134. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On May 13, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

3. The Debtor continues to manage its businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this bankruptcy case. An official committee of unsecured creditors was appointed by the United States Trustee on June 1, 2010 (the "Committee").

**A.     Events Leading to Bankruptcy Filing**

4. The Debtor owns and operates a Subtitle D landfill located in McKean County (the "Landfill"), Pennsylvania, which disposes of non-hazardous waste from about 50 customers. As a designated landfill to the McKean County Solid Waste Plan, the Debtor's customer base is local and includes home and business owners, independent licensed haulers, municipal governments, and large businesses and institutions within McKean County and surrounding rural counties in Northwest Pennsylvania.

5. The Landfill was acquired by the Debtor in 2005 from McKean County Solid Waste Authority for $17 million. Subsequent to acquiring the Landfill, the Debtor was

successful in obtaining the only permit from the Pennsylvania Department of Environmental Protection (the "DEP") for the construction and operation of a large-scale rail-served landfill. The expanded permit was issued by the DEP in June 2009.

6. Unfortunately, for years prior to the Petition Date, the Debtor was involved in litigation initiated by Maria Casey, a previous member of the Debtor (the "Casey Litigation"). The Casey Litigation cost the Debtor in excess of $4 million in legal fees and settlement expenses, plus personnel resources. The Casey Litigation has been a significant distraction for the Debtor and has impeded the Debtor's ability to fully develop the Landfill under the expanded permit.

7. In addition, the recession beginning in late 2008 has resulted in a significant reduction in waste generation rates through the United States, which has reduced demand on landfill capacity. A significant factor in the reduced waste generation rates has been a lack of construction and demolition debris caused by a reduction in housing construction. As demand for landfill capacity has decreased—causing a flood of landfill capacity in the market—the Debtor has not been able to capitalize on the increased capacity allowed by the new permit.

8. The Debtor's management implemented a series of programs to reduce costs and increase revenues. On the cost side, the Debtor scaled back its county-wide recycling program, which was losing money, and implemented lay offs or hour reductions for certain non-essential employees. In addition, all unnecessary capital expenditures were eliminated and management has had some success renegotiating various royalty agreements with third parties to reduce the Debtor's liability thereunder. On the revenue side, the Debtor offered existing customers volume-based pricing incentives and solicited event business generated by gas companies drilling in the region for Marcellus Shale Gas.

9. Despite these measures, the Debtor was not able to keep up with payments to creditors and is in default of a number of obligations. With no indication that the Debtor would be able to bring its obligations current, the Debtor's management determined that a Chapter 11 bankruptcy was necessary in the short term.

10. Beginning in 2010, the Debtor began negotiating with its pre-petition lender, Merrill Lynch Portfolio Management, Inc. (the "Secured Lender") regarding a long-term solution to the Debtor's financial difficulties, including the Secured Lender's willingness to extend post-petition financing to fund the Debtor's bankruptcy. After substantial discussions regarding the Debtor's ability to reorganize and continue operating post-bankruptcy, the Debtor determined that a liquidation was necessary.

11. To maximize the value of the Debtor's assets—including the unique nature of the Debtor's permit—the Debtor has determined that a bankruptcy sale is preferable. In April 2010, the Debtor and the Secured Lender reached an agreement regarding short-term funding arrangements, including post-petition financing to be provided by the Secured Lender, and authorization for cash collateral usage which the Debtor expects will allow the Debtor to fully market the Landfill and sell through a plan of liquidation.

12. The proceeds of the proposed sale will be distributed in accordance with the Debtor's Plan (defined below), subject to an agreement (the "Proceeds Agreement") whereby the Secured Lender agreed to a carve out for the Debtor's members from certain proceeds the Secured Lender receives as part of the sale of the Debtor's assets. The Proceeds Agreement has been filed on the docket as Document No. 189.

13. On July 1, 2010 the Court entered a final order (the "Final Order") authorizing the Debtor to use the Secured Lender's cash collateral and approving post-petition loans in

accordance with a budget (as amended from time to time, the "DIP Financing") (Document No. 159).

14. In negotiating the DIP Financing, the Debtor determined that, in light of limitations on available funding for operations and the probable value that would be attained were the assets to be liquidated on a piecemeal basis, the best interests of the Debtor's estate, creditors, employees and other parties-in-interest would be served by the expedient marketing and going concern sale of all or substantially all of its assets to the bidder making the highest and best offer.

15. The Debtor filed a plan of reorganization (as may be amended, the "Plan") and accompanying disclosure statement (as may be amended, the "Disclosure Statement") on the Petition Date that provide for a sale of substantially all of the Debtor's assets through the Plan process. An amended Plan and amended Disclosure Statement were filed by the Debtor on August 9, 2010. Document Nos. 215, 217. The Plan and Bid Procedures Order (defined below) provide that substantially all of the Debtor's assets (as defined more fully in the Bid Procedures Order) will be sold free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against with such liens attaching to the proceeds of the sale.

### B. Steps Taken to Market the Assets

16. On June 3, 2010, the Court entered an Order authorizing the employment of Sterner Consulting as broker and financial advisor to the Debtor (the "Broker"). The Broker was retained to, *inter alia*, promote the sale or disposition of substantially all of the Debtor's assets.

17. Since early June, the Broker has done the following in connection with marketing the sale of the Debtor's assets:

- Communicated with the Debtor regarding documentation and data needed to complete the marketing materials;

- Prepared a landfill site overview to accompany introductory communications with Potential Bidders;

- Compiled a list of contacts and potentially interested parties in consultation with the Debtor's management;

- Prepared a 50-page offering memorandum that includes an overview and detailed information about the Landfill, the Debtor's agreements, as well as features of the Landfill, the Debtor's competition, waste flow information and other relevant factors relating to the Debtor's operations;

- Sent introductory communications via electronic mail to 146 potential interested buyers that included a data sheet, proposed confidentiality agreement and general information about the sale process;

- Placed advertisements in Waste News & Recycling, a Crain's trade magazine that has the highest readership within the solid waste industry in the United States, for at least two insertions beginning June 21, 2010 on a bi-weekly basis advertising the sale of the Landfill;

- Placed an ad in Waste Age, a glossy monthly periodical advertising the sale of the Landfill;

- Placed cold calls and follow up calls to those included in the initial e-mail list and conducted research to send a second round of e-mails to potential interested parties;

- Executed confidentiality agreements with 30 Potential Bidders and responded to requests for additional information;

- Established a database of about 4 GB of data relevant to potential buyers that may be accessed through a data room maintained on the Broker's computer systems. Through August 31, 2010, more than 50 specific e-mail addresses have been granted access to the data room;

- Transmitted the offering memorandum and secure access credentials to all parties who have signed confidentiality agreements;

- Conducted four formal site visits for fifteen companies and expect to conduct site visits for two additional companies. In addition, the Debtor's management has hosted two other companies for site visits;

- Completed an inventory verification and comparison of electronic information in the data room to ensure information in data room is as complete as possible;

- Provided a weekly update e-mail to Potential Bidders with information about documents added to the data room, updates on the landfill cell construction progress, comments regarding key site operations, and other notable items; and

- Submitted key documents to Potential Bidders, including bidding procedures, contracts and lease schedule and draft asset purchase agreement;

18. Despite the efforts of the Debtor and the Broker, no stalking horse bidder for the assets has been identified. The Debtor therefore proposes to auction the assets without a stalking horse bidder.

### C. Sale Pleadings Filed With the Court

19. The proceeds of the proposed sale will be distributed, and the liens will be satisfied, in accordance with the Plan, subject to an agreement (the "Proceeds Agreement") whereby the Secured Lender[1] agreed to a carve out for the Debtor's members from any proceeds the Secured Lender receives as part of the sale. The Proceeds Agreement was filed on the docket as Document No. 189.

20. On July 22, 2010, the Debtor filed a *Motion for an Order (A) Approving Bidding Procedures for the Sale of Substantially all Assets of the Debtor; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving the Form of Notice; and (E) Granting Related Relief* (the "Bid Procedures Motion"). Document No. 188. The Court held a hearing on the Bid Procedures Motion on August 12, 2010.

21. On August 18, 2010, the Court entered an Order Approving Bid Procedures for the sale of substantially all of the Debtor's assets, as defined more fully therein (the "Bid Procedures Order"). Document No. 252. ***The Bid Procedures Order provides for an Auction and Sale Hearing to be held October 7, 2010 at 3:00 p.m. and for a Confirmation Hearing on***

---

[1] Terms not otherwise defined herein shall have the meaning given in the Bid Procedures Order.

*the Plan to be held on October 21, 2010 at 3:00 p.m.* The Bid Procedures Order also sets forth the procedures for the submission of bids and the Auction.

22. On August 18, 2010, the Court also entered an Order requiring the Debtor and the Secured Lender to file a list of considerations for the determination of the Successful Bidder at the Auction and scheduling a hearing on those considerations for August 26, 2010. Document No. 254. On August 25, 2010, the Debtor filed a list of proposed considerations for determination of the Successful Bidder at the Auction, which was approved, as modified, by the Court on August 30, 2010. Document Nos. 260, 271. Also on August 25, 2010, the Debtor filed a proposed form of Asset Purchase Agreement that potential bidders may use for submission of their respective bids. Document No. 266.

23. On August 23, 2010, the Court entered an Order (the "August 23 Order") requiring the Debtor to file a separate Sale Motion relating to the proposed sale. Document No. 258. While recognizing that the Debtor intends to sell substantially all of its assets pursuant to the Plan, the Court stated in the August 23 Order that fairness requires that all parties with an interest in the property to be sold by the Debtor be provided with clear and sufficient notice of the proposed sale. The Court determined that the sale motion process is well-designed to provide the required notice to parties whose rights may be affected by the proposed sale. This Motion is being filed to comply with the August 23 Order and provide all parties whose rights may be affected with clear and sufficient notice of the proposed sale. *Any objections to this Motion must be filed on or before September 30, 2010.*

**RELIEF REQUESTED**

24. By this Motion, the Debtor respectfully requests that the Court enter an Order approving the sale of substantially all of the Debtor's assets as part of the Plan. The proposed sale will be pursuant to the terms set forth in the Proposed Agreement as agreed to by and

8

between the Debtor and the Successful Bidder, and as approved by the Court. Both the terms of the Proposed Agreement and the identity of the Successful Bidder are currently unknown, but will be determined by the Debtor and Secured Lender by October 14, 2010, and will be presented to the Court for approval at the Confirmation Hearing.

25. An Auction or sale of the assets will be held on **October 7, 2010 at 3:00 p.m.**, consistent with the currently pending *Amended Plan of Reorganization* filed at Document No. 217 and related filings, including the Bid Procedures Order.

26. In accordance with the August 23 Order, Document No. 258, this Motion will initially be considered by the Court at the hearing to be held on October 7, 2010, but the final ruling on this Motion will be deferred until October 21, 2010 at 3:00 p.m., the time set for the Plan Confirmation Hearing in this matter, or such other time as the Court makes a determination as to whether the Plan should be confirmed. Any sale order finally entered by the Court will be following and subject to, and a result of, the Plan confirmed in this case.

**The Proposed Sale of Substantially All of the Debtor's Assets Pursuant to the Plan is Authorized by 11 U.S.C. § 1123(a)(5)(D) and (b)(4).**

27. As set forth above, the Debtor proposes to sell substantially all of its assets (as defined more fully in the Bid Procedures Order) through the Plan. Pursuant to Section 1123 of the Bankruptcy Code:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
>
> * * *
>
> (5) provide adequate means for the plan's implementation, such as—
>
> * * *
>
> (D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the

9

> distribution of all or any part of the property of the estate among those having an interest in such property of the estate;

(b) Subject to subsection (a) of this section, a plan may—

* * *

> (4) provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests;

11 U.S.C. § 1123(a)(5)(D), (b)(4).

28. The proposed sale is the cornerstone of the proposed Plan and is necessary for the Debtor's bankruptcy case to conclude. The proposed sale has been incorporated in the Plan as the means by which the Plan will be implemented, as required by Section 1123(a)(5) of the Bankruptcy Code, which Plan also provides for the sale of substantially all of the Debtor's assets free and clear of any liens, with such liens attaching to the proceeds of the sale.

29. Because the proposed sale meets the requirements of Section 1123 of the Bankruptcy Code, the sale should be approved by the Court to the extent the Plan is otherwise confirmable pursuant to Section 1129 of the Bankruptcy Code.

## Notice Procedures

30. GCP #3 sets forth the notice requirements for a sale outside of the ordinary course of business pursuant to Federal Rule of Bankruptcy Procedure 6004(f). The requirements of GCP #3 were previously incorporated into the Bid Procedures Motion, which requested approval by the Court of the Sale Notice to be sent to creditors and other parties in interest.

31. Through the Bid Procedures Order, the Court approved the form of the Sale Notice and the notice procedures set forth in the Bid Procedures Motion, which included service and publication of the Sale Notice in accordance with GCP #3.

32. Additionally, a copy of the Plan and Disclosure Statement will be sent to all parties-in-interest upon approval by the Court.

33. As the Debtor has previously complied with GCP #3 by serving a Sale Notice that met the requirements set forth therein, and because the Debtor will serve this Motion, and (upon approval of the Disclosure Statement) a copy of the Plan and Disclosure Statement, the Debtor believes that no further notice of the sale is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order approving the sale of substantially all of the Debtor's assets to the Successful Bidder as part of the Plan.

Respectfully submitted,

BY: /s/ Lawrence C. Bolla

Dated: September 7, 2010

**QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.**
Lawrence C. Bolla, Esquire
PA Id. No. 19679
Nicholas R. Pagliari, Esquire
PA Id. No. 87877
2222 West Grandview Boulevard
Erie, Pennsylvania 16506-4508
Telephone: 814-833-2222
Facsimile: 814-833-6753
lbolla@quinnfirm.com
npagliari@quinnfirm.com

and

  /s/ Peter C. Hughes
**DILWORTH PAXSON LLP**
Peter C. Hughes
PA Id. No. 62806
Jennifer L. Maleski
PA Id. No. 93154
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
phughes@dilworthlaw.com
jmaleski@dilworthlaw.com

*Counsel for Debtor, Rustick, LLC*

Document #530253, v1