**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankruptcy No. 10-10902 TPA** |
| **Rustick, LLC** | ) | |
| | ) | **Chapter 11** |
| **Debtor** | ) | |
| | ) | **The Honorable Thomas P. Agresti** |
| | ) | |
| | ) | **Related to Document Nos. 17, ~~18~~18, 215, 217** |

**FIRST AMENDED DISCLOSURE STATEMENT (AS REVISED)**
**TO ACCOMPANY FIRST AMENDED PLAN DATED AUGUST 9, 2010**

☐ Chapter 11 Small Business (Check only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e)).

Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating debtor's proposed Chapter 11 plan, a copy of which is attached hereto. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. The Court will schedule a hearing on the plan pursuant to 11 U.S.C. § 1129.

Address for return of ballots:

Stephanie McFadyen
Dilworth Paxson LLP
1500 Market Street – Suite 3500E
Philadelphia, PA 19102

**I.** **Background**

1. Name of Debtor:

1

Rustick, LLC

2.    Type of Debtor (individual, partnership, corporation):

Limited Liability Company

3.    Debtor's Business or Employment:

The Debtor owns and operates a Subtitle D landfill located in McKean County (the "Landfill"), Pennsylvania, which disposes of non-hazardous waste from about 50 customers.  As a designated landfill to the McKean County Solid Waste Plan, the Debtor's customer base is local and includes home and business owners, independent licensed haulers, municipal governments, and large businesses and institutions within McKean County and surrounding rural counties in Northwest Pennsylvania.

4.    Date of Chapter 11 Petition:

May 13, 2010

5.    Events that Caused the Filing:

Subsequent to acquiring the Landfill, the Debtor was ~~very~~ successful in obtaining the only permit from the Pennsylvania Department of Environmental Protection (the "DEP") for the construction and operation of a large-scale rail-served landfill.  The expanded permit was issued by the DEP in June 2009.

Unfortunately, the Debtor has also been mired in litigation initiated by Maria Casey, a previous member of the Debtor (the "Casey Litigation"). The Casey Litigation—which is ongoing—has cost the Debtor in excess of $4 million in legal fees and settlement expenses, plus personnel resources. The Casey Litigation has been a significant distraction for the Debtor and has impeded the Debtor's ability to fully develop the Landfill under the expanded permit.

In addition, the recession beginning in late 2008 has resulted in a significant reduction in waste generation rates through the United States, which has reduced demand on landfill capacity.  A significant factor in the reduced waste generation rates has been a lack of construction and demolition debris caused by a reduction in housing construction.  As demand for landfill capacity has decreased—causing a flood of landfill capacity in the market—the Debtor has not been able to capitalize on the increased capacity allowed by the new permit.

881995_2
882015_1

The Debtor's management has implemented a series of programs to reduce costs and increase revenues. On the cost side, the Debtor scaled back its county-wide recycling program, which was losing money, and implemented lay offs or hour reductions for certain non-essential employees. In addition, all unnecessary capital expenditures have been eliminated and management has had some success renegotiating various royalty agreements with third parties to reduce the Debtor's liability thereunder. On the revenue side, the Debtor has offered existing customers volume-based pricing incentives and solicited event business generated by gas companies drilling in the region for Marcellus Shale Gas.

Despite these measures, the Debtor has not been able to keep up with payments to creditors and is in default of a number of obligations. With no indication that the Debtor will be able to bring its obligations current, the Debtor's management determined that a Chapter 11 bankruptcy was necessary in the short term.

6.    Anticipated Future of the Company & Source of this Information and Opinion:

The Debtor intends to sell substantially all of its assets pursuant to the Plan to a third party purchaser to be identified during an auction and sale process. The Debtor expects that the purchaser will continue to operate the landfill business. Following closing of a sale, the Debtor will cease operating the landfill and the Debtor's activities will be limited to a windup of its affairs.

7.    Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan:

The Plan ~~calls~~provides for a sale of substantially all assets to a purchaser to be identified during an auction and sale process. Except is as described below, Claims will be paid from the Plan Cash on the Effective Date of the Plan, which shall occur upon closing of the sale of Debtor's assets, in the priority provided in the Bankruptcy Code. No liens will be retained or granted.

In addition, the Pre-Petition Bondholders have agreed to a carve out of certain proceeds from the sale of their collateral that will be used to make a distribution to general unsecured creditors to the extent the sale generates sufficient funds to pay the DIP Facility Claim in full. Per the terms of this agreement up to $625,000 may be generated for a "Gift Pot" for the benefit of general unsecured creditors. The distribution of the ~~proceed~~proceeds of the Gift Pot is subject to any existing subordination

3

agreements between any individual general unsecured creditors and the Pre-Petition Bondholders, as set forth more fully in the Plan.

Finally, the Plan provides for the preservation of certain Causes of Action held by the Debtor. Pursuant to the Plan, Preference Actions will be transferred to a Creditor Representative (to be appointed by the Creditors' Committee prior to the Effective Date). In addition, Other Causes of Action will be transferred to the Plan Administrator to be pursued at his discretion.

8.    Are All Monthly Operating Statements current and on File With The Clerk of Court?

☒ Yes         ☐ No

If Not, Explain:

9.    Does the plan provide for releases of nondebtor parties? Specify which parties and terms of release.

Yes. The Plan defines "Released Parties"[1] to include (i) the Debtor Representatives; (ii) ~~the DIP Lender,~~ Merrill Lynch Portfolio Management, Inc., as pre-petition and DIP Lender; (iii) the Pre-Petition Bondholders, which hold the bonds issued by the Pennsylvania Economic Development Financing Authority in August 2005; (iv) the Indenture Trustee, the Bank of New York Trust Company, N.A., as successor to J.P. Morgan Trust Company, National Association, or any successor appointed under the Indenture; (v) the Purchaser of the Debtor's Assets; (vi) all professionals retained in the Debtor's case; and (vi) all affiliates, advisors, principals, employees, officers, directors, representatives, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives and professionals with respect to the above parties.

The Plan provides for the Debtor and each of the Debtor Representatives to release the Released Parties from any and all claims, obligations, suits, judgments, damages, demands debts, rights, causes of action and litigation, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based on,

---

[1]  All terms not otherwise defined herein shall have the definition provided in the Plan.

4

or relating to, in whole or in part, the Exculpated Claims (as defined in the Plan), the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, or any act, omission, transaction, event or other occurrence, in any manner relating to the Debtor, any such Claims, Interests, restructuring or the Chapter 11 Case existing from the beginning of time through the Effective Date of the Plan.

In addition, the Plan provides for each Holder of a Claim or Interest (a) voting to accept the Plan or (b) abstaining from voting on the Plan and electing not to opt out of the release contained in this section 10.7, and any Affiliate of any such Holder (as well as any trustee or agent on behalf of each such Holder) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever waived, released and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtor, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that such Person would have been entitled to assert, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of this Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place from the beginning of time through the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan; provided, however, that the Plan does not propose to release any Released Party from any cause of action held by a Governmental Unit existing as of the Effective Date based on (i) the IRC or other domestic state, city, or municipal tax code; (ii) any criminal laws of the United States or any domestic state, city or municipality; (iii) the Exchange Act, the Securities Act, or other securities laws of the United Sates or any domestic state, city or municipality; (iv) ERISA; or (v) the Pennsylvania Department of Environmental Protection.

881995_2
882015_1

10. Identify all executory contracts that are to be assumed or assumed and assigned.

As explained above, the Debtor is proposing to sell substantially all of its assets ~~through an auction sale~~pursuant to the Plan.  On July 22, 2010, the Debtor filed a Motion with the Court to establish procedures for the sale and auction (the "Bid Procedures Motion"), which also requests that the Court approve certain procedures for the assumption and assignment of executory contracts and unexpired leases to the purchaser.  The Debtor is unable to determine at this time which executory contracts will be chosen for assumption and assignment by the purchaser.

~~Prior to the deadline for submission of bids for the Debtor's assets, the Debtor expects to file~~The Debtor has filed on the docket a form asset purchase agreement, which ~~will include~~includes a schedule of all executory contracts and unexpired leases and proposed cure amounts. This global list of executory contracts and unexpired leases ~~will be~~has also been served on all non-debtor counterparties to the respective contracts~~as soon as practicable after the form asset purchase agreement is filed~~.

Pursuant to the procedures proposed by the Bid Procedures Motion, the purchaser of the Debtor's assets will have the ability to designate any of the Debtor's executory contracts and unexpired leases for assumption and assignment.  At the conclusion of the auction, the Debtor will file a revised list of executory contracts and unexpired leases that have been identified by the successful bidder, which will be served on all non-debtor counterparties to such contracts.  The assumption and assignment of such contracts and leases will be heard by the Court during the hearing on confirmation of the Plan.

Among the Debtor's leases and contracts are (1) a lease agreement (the "GSWP Lease") with the Girl Scouts Western Pennsylvania ("GSWP") with respect to a 27 acre parcel which includes a leachate facility and (2) an option to purchase an approximately 400 acre parcel property from GSWP (the "GSWP Option") which includes the 27 acre parcel which is the subject of the GSWP Lease.

As of the filing of this Disclosure Statement, the Debtor intends to assume those leases and contracts for which assumption and assignment is sought by a successful bidder for the landfill, and to reject those leases and contracts for which assumption and assignment is not sought by the successful bidder. The Debtor believes that a leachate facility is required to operate the landfill and that a buyer of the facility is likely to seek assumption and assignment of the GSWP Lease. The Debtor is not, however, able as of the date of this Disclosure Statement to determine

6

with any certainty which leases and contracts will be selected by a successful bidder.

11.    Has a bar date been set?  (If not, a motion to set the bar date has been filed simultaneously with the filing of this disclosure statement.)

⊠ Yes          ☐ No

The bar date has been set for August 31, 2010.

12.    Has an election under 11 U.S.C. § 1121(e) been filed with the Court to be treated as a small business?

☐ Yes          ⊠ No

13.    Specify property that will be transferred subject to 11 U.S.C. § 1146(~~e~~a).

Substantially all property of the Debtor will be transferred to buyer under 11 U.S.C. §1146(~~e~~a).

**II.    Creditors[2]**

A.    Secured Claims

## SECURED CLAIMS

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|---|
| Pre-Petition Bond | $22,205,437 | Unknown | Blanket lien | | N |

---

[2] The Debtor reserves all rights with respect to amending its schedules or objecting to claims, except as to amounts of claims that have been stipulated to previously by the Debtor.

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|---|
| Claims | | | on all assets (1) | | |
| Rosalie Bishop, Tax Collector | $117,869 | $87,267 | Real Property (1) | | N |
| ~~Great American~~GreatAmerica Leasing Corp. | $22,276 | $1,108 | Equipment (1) | | N |
| Evergreen UNI | $~~301,419~~87,897 | Unknown | Cash Deposit (1) | | N |
| Smethport Area School District | $7,260 | $7,260.55 | Real Estate (1) | | N |
| Caterpillar Financial Services** | $181,801 | Unknown | Equipment (1) | | N |
| **TOTAL** | $~~22,654,263~~22,622,540 | Unknown | | | |
| | | | | | |

\* Disputed (D), Liquidated(L), Unliquidated (U)

**Claims were filed by Caterpillar Financial Services that were not listed as secured claims in the Debtor's Schedules.  The Debtor reserves all rights with respect to this claim.

B.     Priority Claims

# PRIORITY CLAIMS

| Creditor | Total Amount Owed | Type of Collateral | (D) (L) (U)* |
|---|---|---|---|
| None | | | |
| | | | |
| | | | |
| **TOTAL** | | | |

\* Disputed (D), Liquidated(L), Unliquidated (U)

881995_2
882015_1

C. Unsecured Claims

    1.    Amount Debtor Scheduled (Disputed and Undisputed)    $20,898,800

    2.    Amount of Unscheduled Unsecured Claims (as of ~~7~~8/~~30~~31/10)[~~2~~3]    $ ~~12,498~~37,213

        (plus unliquidated claims in unknown amounts)

    3.    Total Claims Scheduled or Filed    $~~20,911,298~~20,936,013

        (plus unliquidated claims in unknown amounts)

    4.    Amount Debtor Disputes    $   Unknown

    5.    Estimated Allowable Unsecured Claims    $~~20,911,298~~20,936,013

        (plus unliquidated claims in unknown amounts)

D. Other Classes of Creditors (Secured Claims)

    1.    Amount Debtor Scheduled (Disputed and Undisputed)$~~22,654,263~~22,440,739**

    2.    Amount of Unscheduled Claims (as of ~~7~~8/~~30~~31/10)    $~~0~~376,528

    3.    Total Claims Scheduled or Filed    $~~22,654,263~~22,817,267

    4.    Amount Debtor Disputes    ~~$0~~Unknown

    5.    Estimated Allowable Claims    $~~22,654,263~~22,817,267

    **Reduced to reflect correct amount of Evergreen claim.

E. Other Classes of Interest Holders

    1.    Amount Debtor Scheduled (Disputed and Undisputed)    $0

    2.    Amount of Unscheduled Claims[1]    $0

    3.    Total Claims Scheduled or Filed    $0

    4.    Amount Debtor Disputes    $0

    5.    Estimated Allowable Claims    $0

There are 3 Interest Holders known to the Debtor: Richard Welch, Richard Godshall and Randall M. Hendricks. The Plan provides for interests to be extinguished.

---

[23] Includes a) unsecured claims filed by unscheduled creditors; b) that portion of any unsecured claim filed by a scheduled creditor that exceeds the amount debtor scheduled; and c) any unsecured portion of any secured debt not previously scheduled.

3.      **Assets**[34]

## ASSETS (As of Petition Date)

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Real Property | $22,730,060 | Book Value | Pre-Petition Bond Claims, Real Estate Tax Claims | $0 |
| Northwest Savings Bank Checking Account No. XXXXX1887 | $17,448 | Actual | Pre-Petition Bond Claims | $0 |
| Bank of America Trust Account | $12,715 | Actual | Pre-Petition Bond Claims | $0 |
| Northwest Savings Bank Savings Account No. XXXXXX5827 | $10,008 | Actual | Pre-Petition Bond Claims | $0 |
| Northwest Savings Bank Savings Account No. XXXXXX6002 | $31,834 | Actual | Pre-Petition Bond Claims, | $0 |
| Accounts Receivable | $211,107 | Book Value | Pre-Petition Bond Claims, | $0 |
| Office Equipment | $3,720 | Book Value | Pre-Petition Bond Claims, | $0 |
| Machinery and Equipment | $340,170 | Book Value | Pre-Petition Bond Claims | $0 |
| Mini Excavator and High Pressure Washer (subject to buy out option) | $25,000 | Book Value | Pre-Petition Bond Claims, Great American Leasing Corporation | $0 |
| Rail Spur | $282,117 | Book Value | Pre-Petition Bond Claims | $0 |
| Cash Deposit Held | $3,360,937 | Actual | Pre-Petition | $0 |

---

[34] The Debtor reserves all rights with respect to this list of assets and all liens asserted by creditors.

10

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| by Evergreen UNI | | | Bond Claims, Evergreen UNI Performance Bonds | |
| Land Options | $19,688 | Book Value | Pre-Petition Bond Claims | $0 |
| Pre-Paid Expenses | $69,963 | Book Value | Pre-Petition Bond Claims | $0 |
| **TOTAL** | **$27,114,767** | | | **$0** |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above? If so, identify asset and explain why asset is not in estate:

    None.

2. Are any assets listed above claimed as exempt? If so attach a copy of Schedule C and any amendments.

    None.

## IV. <u>Summary of Plan</u>

1. Effective Date of Plan: Upon satisfaction of conditions to Effectiveness, including closing on sale of substantially all assets.

2. Will cramdown be sought? ☒ Yes ☐ No If yes, state bar date: None at this time.

3. Treatment of Secured **Non-Tax** Claims

SECURED **NON-TAX** CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Pre-Petition Bond Claims | 4 | $~~23,205,437~~ 22,205,437 | Pro rata share of Plan Cash after payment of |

11

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| | | | Administrative Claims, DIP Facility Claims, and Class 1, 2 and 3 Claims |
| Great ~~American~~America Leasing Corp. | 3 | $22,276 | At Debtor's discretion (i) value of secured claim or (ii) return of collateral |
| Evergreen UNI | 3 | $~~301,419~~87,897 | At Debtor's discretion (i) value of secured claim or (ii) return of collateral |
| Caterpillar Financial Corporation | | $181,801 | At Debtor's discretion (i) value of secured claim or (ii) return of collateral |
| **TOTAL** | | $~~23,529,132~~22,497,411 | |

4. **Treatment of Secured Tax Claims**

**SECURED TAX CLAIMS**

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Rosalie Bishop, Tax Collector | 3 | $117,869 | At Debtor's discretion (i) value of secured claim or (ii) return of collateral |
| Smethport Area School District | 3 | $7,260 | At Debtor's discretion (i) value of secured claim or (ii) return of collateral |
| **TOTAL** | | $125,129 | |

5. Treatment of Administrative **Non-Tax** Claims[45]

ADMINISTRATIVE **NON-TAX** CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt* | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|

---

[45] Include all §503(b) administrative claims.

12

| Name of Creditor* | Amount Owed | Type of Debt* | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Dilworth Paxson LLP | Unknown | P | Payment in full of Allowed Claims on Effective Date |
| Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc. | Unknown | P | Payment in full of Allowed Claims on Effective Date |
| Detweiler, Hershey & Associates, P.C. | Unknown | P | Payment in full of Allowed Claims on Effective Date |
| Bernstein Law Firm, P.C. | Unknown | P | Payment in full of Allowed Claims on Effective Date |
| ~~Execute~~Executive Sounding Board Associates, Inc. | Up to $15,000 | P | Payment in full of Allowed Claims on Effective Date |
| Sterner Consulting | Unknown | P | Payment in full of Allowed Claims on Effective Date |
| **TOTAL** | Unknown | | |

\* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
\*\* Type of Debt (P = Professional, TD = Trade, TX = Taxes)

Counsel to the Debtor and the Committee have expended close to the aggregate amount allocated in the existing cash collateral budget pursuant to the DIP Financing Order. 11 U.S.C. §1129(a)(8)(A) provides that administrative claims must be paid in full, including allowed professional fees, in order for a plan to be confirmed. There may be insufficient funds to pay professional fees as required in order to confirm a plan unless the Budget is modified.

**6. Treatment of Administrative Tax Claims**

ADMINISTRATIVE **TAX** CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt* | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| None | | | |
| | | | |
| **TOTAL** | | | |

\* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
\*\* Type of Debt (P = Professional, TD = Trade, TX = Taxes)

7. Treatment of Priority Non-Tax Claims

PRIORITY NON-TAX CLAIMS

13

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| None | 2 | | | Payment in full of Allowed Claims on Effective Date |
| | | | | |

8.      Treatment of Priority Tax Claims[56]

## PRIORITY TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| Internal Revenue Services*** | 1 | $2,198.00 | Unknown | Payment in full of Allowed Claims on Effective Date |
| | | | | |

***Claim filed on Claims Register and not included in Debtor's Schedules. The Debtor reserves all rights to object to this claim.

9.      Treatment of General Unsecured Non-Tax Claims

## GENERAL UNSECURED NON-TAX CLAIMS

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| ACME Business Machines | 5 | $89.58 | Unknown |
| AFLAC | 5 | $109.56 | Unknown |
| Allegheny Power | 5 | $8,077.03 | Unknown |
| Apple Tractor, Inc. | 5 | $1,510.50 | Unknown |
| Barbers Chemicals, Inc. | 5 | $1,733.78 | Unknown |
| Caterpillar Financial Services | 5 | $28,604.18 | Unknown |
| Chartis | 5 | $4,324.00 | Unknown |

---

[56] Include dates why any §507(a)(7) taxes were assessed.

14

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| Cleveland Brothers Equipment Co., Inc. | 5 | $1,044.90 | Unknown |
| County of McKean (Note) | 5 | $~~500,000.00~~240,731 (amount in scheduled claim) | Unknown (designated a Subordinated Note Claim) |
| County of McKean (Royalty Fees) | 5 | $55,628.71 | Unknown |
| Count of McKean (Indemnification)**** | 5 | Unliquidated | Unknown |
| Drive Shaft Specialists | 5 | $243.00 | Unknown |
| Ernharth & Associates, Inc. | 5 | $895.00 | Unknown |
| Federal Express | 5 | $21.50 | Unknown |
| Girl Scouts of Western Pennsylvania | 5 | $26,325.64 | Unknown |
| GTS-WELCO | 5 | $198.41 | Unknown |
| Hasler, Inc. | 5 | $44.47 | Unknown |
| Highmark Blue Shield | 5 | $8,305.32 | Unknown |
| IA Construction Corp. | 5 | $1,273.07 | Unknown |
| Internal Revenue Service**** | 5 | $485.62 | Unknown |
| J&J Honey Dipping | 5 | $2,410.00 | Unknown |
| James D. Hennigan Trucking | 5 | $5,914.26 | Unknown |
| Kanawha Scales & Systems of PA | 5 | $824.48 | Unknown |
| Kane Auto Parts | 5 | $863.83 | Unknown |
| Kane Liquid Fuels, Inc. | 5 | $5,727.64 | Unknown |
| Kane Liquid Fuels, Inc. Pacific Price | 5 | $309.46 | Unknown |
| Klehr Harrison Harvey Branzburg Ellis LLP**** | 5 | $43,451.49 (disputed) | Unknown |
| Kyocera Mita/GE Capital**** | 5 | $3480.70 | Unknown |
| Martin & Martin, Inc. | 5 | $3,600.50 | Unknown |
| Meiser & Earl, Inc. | 5 | $1,482.00 | Unknown |
| Michael J. Manderfeld | 5 | $350.00 | Unknown |
| Merrill Lynch Portfolio Management (Note) | 5 | $18,791,217.07 | Unknown |
| Merrill Lynch Portfolio Management (Placement Note) | 5 | $2,103,750.00 | Unknown |
| Mountain Research LLC | 5 | $1,775.00 | Unknown |
| Nationwide Trust Company FSB | 5 | $226.41 | Unknown |
| Office Depot Credit Plan | 5 | $53.17 | Unknown |
| Pennsylvania Department of Environmental Protection | 5 | $1,194.50 | Unknown |
| Paris Uniform Rental | 5 | $1,044.20 | Unknown |
| Premium Financing Specialists | 5 | $3,059.97 | Unknown |
| Randall Hendricks**** | 5 | Unliquidated | Unknown |
| Richard Godshall**** | 5 | Unliquidated | Unknown |
| Richard M. Welch | 5 | $2,538,326.66 | Unknown |

881995_2
882015_1

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| | | | (designated a Subordinated Note Claim) |
| Richgas, Inc. | 5 | $1,165.00 | Unknown |
| Rochem Membrane Systems, ~~inc~~Inc. | 5 | $3,200.00 | Unknown |
| SCS Engineers | 5 | $3,084.88 | Unknown |
| SCS Field Services | 5 | $632.11 | Unknown |
| Selective Insurance | 5 | $734.00 | Unknown |
| Sprint | 5 | $91.50 | Unknown |
| The Bank of New York | 5 | $7,950.00 | Unknown |
| Trina Thomas Flowers | 5 | $55.00 | Unknown |
| USA Blue Book | 5 | $187.84 | Unknown |
| Veolia Environmental Services | 5 | $8.88 | Unknown |
| Verizon | 5 | $537.64 | Unknown |
| WLT Investments, Inc. | 5 | $2,733,333.30 | Unknown (designated a Subordinated Note Claim) |
| **TOTAL** | | Unknown | |

****These Claims were either not included in the Debtor's Schedules or were listed in the Schedules as Disputed. The Debtor reserves all rights to object to the allowance of these claims, as necessary.

As set forth in Section 4.5 of the Plan, General Unsecured Claims shall receive, to the extent all Allowed Administrative Claims, DIP Facility Claims, and Allowed Class 1, 2, 3 and 4 Claims are paid in full, their pro rata share of the remaining Plan Cash, subject to Sections 4.5.4 and 4.5.5 of the Plan, discussed below.

Merrill Lynch has agreed to establish a "Gift Pot" to be used, in part, for distribution on account of General Unsecured Claims. Merrill Lynch has agreed to transfer 20% of any distributions received pursuant to the Plan on account of the Pre-Petition Bond Claims, Pre-Petition Bond Deficiency Claim and Pre-Petition Notes Claim, up to a maximum of $625,000 to holders of General Unsecured Claims (other than Merrill Lynch).

Holders of Allowed Class 5 General Unsecured Claims (other than the Holders of Subordinated Note Claims, discussed below), shall receive on a pro rata basis, up to a maximum of 90% distribution on account of their respective Allowed General Unsecured Claims from the Gift Pot. Holders of Allowed Subordinated Note Claims shall receive, after payment of the Allowed General Unsecured Claims as set forth above, their pro rata share of the remainder of the Gift Pot, provided that such claimants (i) agree to be bound by the release provisions contained in Article X of the Plan; (ii) do not vote to reject the Plan; and (iii) do not object to the

Plan. To the extent any Holder of an Allowed Subordinated Note Claim does not comply with these requirements, their pro rata share of the Gift Pot shall be paid pro rata to the Holders of Allowed Class 5 General Unsecured Claims up the amount necessary for Holders of Class 5 General Unsecured Claims to receive a distribution of up to 100% of on account of such Allowed Claims.

Pursuant to Section 4.5.4 of the Plan, Subordinated Note Claims are defined to include those claims held by: (i) WLT Investments, Inc. on account of the WLT Investments Note; (ii) Richard M. Welch on account of the Welch Note Claim; and (iii) McKean County on account of the McKean County Note Claim.

In addition, Holders of Class 5 General Unsecured Claims may receive additional distributions from the proceeds of Preference Actions, if any, pursued by the Creditor Representative and the Other Causes of Action, if any, pursued by the Plan Administrator. It is uncertain at this time the potential recovery to Class 5 General Unsecured Claims on account of such Causes of Action. The Plan provides for the costs and professional fees associated with the pursuing the Causes of Action to be paid from the recoveries, if any, of such Causes of Action.

     10.     Treatment of General Unsecured Tax Claims

## GENERAL UNSECURED TAX CLAIMS

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| None | 5 | $0 | Unknown |
| **TOTAL** | | | |

     11.     Will Periodic Payments be made to unsecured creditors?

☐ Yes  ☒ No

The Plan does not provide for any specific schedule for distributions to General Unsecured Creditors. The first distributions, if any, will be made on the Effective Date or as soon as reasonably practicable after the occurrence of the Effective Date. To the extent there are further distributions, such distributions shall be made at the discretion of the Plan Administrator in terms of timing and amount of

17

881995_2
882015_1

such distributions, to the extent there are funds available for subsequent distributions.

If so:

Amount of each payment (aggregate to all unsecured claimants): Unknown
Estimated date of first payment:  Effective Date (if applicable)
Time period between payments:  Not applicable
Estimated date of last payment:  Not applicable
Contingencies, if any:         Not applicable

State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements:

The largest source of funds for the plan is the proceeds of the sale of substantially all assets of the Debtor.  Additional possible sources of payment include (a) return of funds from Evergreen National Indemnity Company, in the event the purchaser enters into an agreement with Evergreen or another holding company which allows the return of the Evergreen funds to the Debtor; and (b) recoveries from avoidance actions, if any.

Other significant features of the plan:

The purchaser of the Debtor's assets has not yet been identified.  The Debtor expects to identify a purchaser through a sale and auction process.

Include any other information necessary to explain this plan:

In connection with its operation of the Landfill, the Debtor holds a permit (the "Permit") issued by the Pennsylvania Department of Environmental Protection (the "DEP").  Pursuant to the terms of the Permit, the debtor is required to maintain certain bonding requirements with the DEP and make other payments under Phased Deposit Endorsements executed by the Debtor on or about May 23, 2009.  The DEP asserts that the Debtor failed to make a required payment due on or about May 23, 2010 and that failure to do so is grounds for the DEP to forfeit the bond amount already deposited and would allow the DEP to make demand for the full amount of the remaining payments due.  The DEP also asserts that the Debtor failed to make certain additional payments to the DEP under the Phased Deposit Endorsements and that such failure is grounds for the DEP to suspend or revoke the Permit.  At this time, the DEP has not demanded payment of the full amount due for bonding, nor has DEP suspended or revoked the Permit.

The continued operation of the Landfill will require the Debtor to transfer the Permit to the Purchaser.  The DEP takes the position that the oustanding payments under the Phased Deposit Endorsements must be brought current before the

881995_2
882015_1

Permit can be transferred to the Purchaser. The Debtor and the DEP have engaged in discussions with respect to that issue, but no resolution has been reached to date. If the Debtor and the PADEP are unable to resolve these issues through an agreement, PADEP will assert that the $1,898,077.57 which PADEP asserts is currently due on the bond obligations is an administrative (non-tax) expense. Debtor reserves its right to contest such administrative expense.

## V.  Comparison of Plan with Chapter 7 Liquidation

If Debtor's proposed plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtor's non-exempt assets. In this event, all secured claims and priority claims, including all expenses of administrative, must be paid in full before any distribution is made to unsecured claimants.

Total liquidation value of Chapter 7 estate ............................ $1,000,000

1.  Less secured claims (See IV-2) ............................ $~~22,654,263~~22,622,544

2.  Less administrative expenses (See IV-3 and include approximate Chapter 7 expenses ............................ $Unknown

3.  Less other priority claims (See IV-4) ............................ $  2,198

Total Amount Available for Distribution to Unsecured Creditors ............................ $    0.00

Divided by total allowable unsecured claims of (See Section II C) ............................ $Unknown

Percentage of Dividend to Unsecured Creditors ............................ 0

Will the creditors fare better under the Plan than they would in a Chapter 7 liquidation?

☒ Yes    ☐ No

881995_2
882015_1

Explain:      Unsecured creditors may receive distributions on account of their allowed general unsecured claims if there are sufficient funds from the sale of substantially all assets of the Debtor left after payment of Administrative Claims, DIP Facility Claims, and Class 1, 2, 3 and 4 Claims. In addition, General Unsecured Creditors may receive a distribution from the Gift Pot if the requirements to establish the Gift Pot are satisfied based on the results of the sale. In a Chapter 7 liquidation, unsecured claims will receive nothing.

**VI.    <u>Feasibility</u>**

    A.    Attach Income Statement for Prior 12 Months (from Petition Date). (See Exhibit A)

    B.    Attach Cash Flow Statement for Prior 12 Months (from Petition Date). (See Exhibit B)

    C.    Attach Cash Flow Projections for Next 12 Months (from Petition Date). (See Exhibit C)

Estimated amount to be paid on effective date of Plan, including administrative expenses

Amount is unknown, but will be approximately equal to the sum of the Debtor's cash on hand plus the amount obtained in connection with sale of substantially all assets of the Debtor.

Show how this amount was calculated.

| | |
|---|---|
| $Unknown | Administrative Class |
| $Unknown | Taxes |
| $Unknown | Unsecured Creditors |
| $Unknown | UST Fees |
| $Unknown | TOTAL |

What assumptions are made to justify the increase in cash available for the funding of the Plan?

Not Applicable.

Will funds be available in the full amount for administrative expenses on the effective date of the Plan? Yes. From what source? From the sale of substantially all assets of the Debtor. If not available, why not and when will payments be made?

Cash on hand $223,276.98        (As of 6/30/10) Attach current bank statement (See Exhibit D)

Cash on hand $Unknown          (Estimated amount available on date of confirmation)

20

If this amount is less than the amount necessary at confirmation, how will Debtor make up the shortfall?

Not Applicable

## VII.  **Management Salaries**

# MANAGEMENT  SALARIES

| Position/Name of Person Holding Position | Salary at Time of Filing | Proposed Salary (Post-Confirmation) |
|---|---|---|
| President/Richard Godshall | $150,000/yr. | Unknown; Post-Effective Date, not employed by Debtor, except perhaps to limited extent, but solely to wind up the affairs of the Debtor. |
| CFO/Randall M. Hendricks | $125,000/yr. | Unknown; Post-Effective Date, not employed by Debtor, except perhaps to limited extent, but solely to wind up the affairs of the Debtor. |

## VIII.  **Identify the Effect on Plan Payments and Specify Each of the Following:**

1.    What, if any, Litigation is Pending?

No bankruptcy-related litigation is pending.

2.    What, if any, Litigation is Proposed or Contemplated?

The Plan provides for the preservation of all Causes of Action held by the Debtor that are not released by the Plan or otherwise and that are not transferred to the Purchaser pursuant to the Asset Purchase Agreement. The Plan provides for the Preference Actions to be transferred to the Creditor Representative and for the Other Causes of Action to be transferred to the Plan Administrator.  It is unclear at this time which Causes of Action, if any, will be pursued by the Creditor Representative and the Plan Administrator.

## IX.  **Additional Information and Comments**

21

None.

881995_2
882015_1

**X.** <u>**Certification**</u>

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan. (See Exhibit E).

If Debtor is a general partnership, attach a copy of the consent agreement of all general partners to the filing of the bankruptcy.

  /s/ Randall M. Hendricks          _____8/9/  /10_
Randall M. Hendricks          Date
Chief Financial Officer

881995_2
882015_1

Dated: ~~August 9,~~ September ___, 2010

BY: /s/Lawrence C. Bolla

**QUINN, BUSECK, LEEMHUIS,
TOOHEY & KROTO, INC.**
Lawrence C. Bolla, Esquire
PA Id. No. 19679
Nicholas R. Pagliari, Esquire
PA Id. No. 87877
2222 West Grandview Boulevard
Erie, Pennsylvania 16506-4508
Telephone: 814-833-2222
Facsimile: 814-833-6753
lbolla@quinnfirm.com
npagliari@quinnfirm.com

and

/s/ Peter C. Hughes

**DILWORTH PAXSON LLP**
Peter C. Hughes
PA Id. No. 62806
Jennifer L. Maleski
PA Id. No. 93154
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
phughes@dilworthlaw.com
jmaleski@dilworthlaw.com

*Co-Counsel for Debtor, Rustick, LLC*

24

Document comparison by Workshare Professional on Tuesday, September 07, 2010
5:03:24 PM

| Input: | |
|---|---|
| Document 1 ID | iManageDeskSite://DMSPH01/PHL/875415/1 |
| Description | #875415v1<PHL> - Rustick/First Amended Disclosure Statement - FINAL |
| Document 2 ID | iManageDeskSite://DMSPH01/PHL/881995/2 |
| Description | #881995v2<PHL> - Rustick - First Amended Disclosure Statement (9/7/10 PCH revisions) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 78 |
| Deletions | 46 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 124 |